BURT JACKSON v. W. H. LEE & CO.

Decided June 17, 1896.

**Partnership—Sale of Business—Notice of Termination.**

Defendant held himself out to and dealt with plaintiff as partner in a business conducted in the name of his son, which was afterwards sold to one H. who continued to order and receive goods from plaintiff in the name of the son. Held, that to render defendant liable for goods so ordered by H. the son's name must have been used by H. with defendant's knowledge or consent, and it was error to charge that, having given the business conducted in the name of his son the credit of his name, he must have given reasonable notice of the dissolution of the relationship which had formerly existed between himself and son in order to terminate his liability.

APPEAL from County Court of Fannin County. Tried below before Hon. J. Q. CHENOWETH.

*Taylor, Galloway & McGrady*, for appellant.—Appellant and A. Jackson having sold out their partnership business to a stranger, J. T.

Hopper, were not required to anticipate and guard against the use of the former name by Hopper in his running of such business.

The subsequent use of A. Jackson's name by said Hopper in such case with the knowledge or consent of A. Jackson, would not render defendant liable, he having previously dissolved all partnership relations with A. Jackson, and he neither having known of·or consented to such use of A. Jackson's name by said Hopper. After such dissolution, the agency existing between defendant and A. Jackson ceased, and notice to A. Jackson, would not be notice to defendant. Irvine v. Grady, 85 Texas, 120; Lindsay, Part., 217; Dodd v. Bishop, 30 La. Ann., 1178.

*Agnew & Duncan,* for appellee.—Notice of the dissolution of a partnership is necessary to terminate the agency of each partner and consequently his powers and liabilities as a member of such firm, and the rights of customers and creditors or other persons having dealings with the firm on the supposition of the continuance of such partnership are not affected by a dissolution of or change in the firm until due notice has been given or knowledge of the fact has been brought home to them. 17 Am. & Eng. Ency. of Law, 1117; Lindley, Part., secs. 210, 213 and notes; Tudor v. White, 27 Texas, 583 and 584; Long v. Garnett, 59 Texas, 229.

When a partnership business is carried on in the name of an individual partner, such partner has full authority to represent and act for the rest and use his name as the name of the firm and his acts and representations in a matter of business which might be theirs binds them all, however fraudulent on his part. Parsons, Part. (3d ed), 128, 129, 130.

COLLARD, ASSOCIATE JUSTICE.— *Opinion.*—This suit was brought by W. H. Lee & Co., merchants of St. Louis, against Burt Jackson, for balance due on account for goods and merchandise alleged to have been sold to Burt Jackson and at his request shipped to A. Jackson, of Elwood, Texas. The account is sworn to. It runs from October, 1892, to December 9, 1893. The first and second items of the account are, "October 15, 1892, Mdse. per invoice, 90 d. $182.30, and January 4, 1893, Mdse. per invoice, 90 d. $145.50." The next item is dated February 27, 1893, and is followed by several items in April, May, June, August, October, November, and December, and the whole account aggregates $1084.05. It is credited by $180.30 January 19, 1893; $47.50 February 11, and $100 April 27, 1893. Other credits were made down to November 23, reducing the account to $256.90, the amount sued for. Defendant filed demurrer, general denial, and special sworn plea that all the items of the account from and including February 27, 1893, are unjust, for that neither defendant nor A. Jackson received or bought or contracted for the same, and authorized no one to purchase the same or any part thereof; that the first two items of the account were just

against defendant and A. Jackson, but as shown by the petition have been paid, as shown by the first three items of credit.

October 26, there was a trial resulting in verdict and judgment for the plaintiff for balance of account claimed by plaintiff, from which this appeal is taken.

A son-in-law of defendant did a grocery business, selling spirituous liquors, and kept a small stock of family groceries. Upon his death A. Jackson, son of defendant, and defendant took charge of the business to wind it up. Soon afterwards B. D. Wilson, traveling salesman for plaintiff, was in Elwood to sell goods. He found defendant and A. Jackson in the store. Wilson testified that defendant told him, Wilson, that the business was his, but that it was run in the name of his son, A. Jackson, and told him to let A. Jackson have what goods he wanted and he, defendant, would pay for them. The salesman then took an order for the first bill of goods, the first item in the account, and Wilson said he thought that at the same time he took an order for a bill of goods to be delivered in the future—the item in the account of date January 4, 1893, amounting to $145.50. He sent the orders to plaintiff to be filled and the goods were sent to A. Jackson. Further than this defendant and Wilson made no other agreement about buying goods in the future, but Wilson told the firm if they wanted more goods to let his house hear from them. Plaintiff shipped to A. Jackson the other goods itemized in the account on orders signed "A. Jackson", the first bill of date February 27, 1893.

On February 20, 1893, defendant and his son A. Jackson sold out the business to one J. T. Hopper, and he ordered all the goods subsequently bought from plaintiff, the orders signed "A. Jackson." Both the Jacksons testify that after their dissolution and selling out of the business they had no further connection with the same and never consented that the name of A. Jackson should be used in connection with it, and if the name of either of them was used in connection therewith it was without their knowledge or consent and without their authority; that Hopper had no connection with their business,—had never clerked for them,—and that Hopper had requested of them that he be permitted to order goods in the name of A. Jackson, but that they had declined to allow him to do so and told him not to do so. A. Jackson also testified that he had signed none of the orders for goods after the dissolution and after the sale to Hopper, and never ordered any of the goods itemized in the account but the first two, which was before the sale to Hopper. Seventeen letters were read in evidence, to plaintiff, signed "A. Jackson," and he, A. Jackson, testified that he signed but three of them, two of which ordered the goods in the first two items, and the other, remitting $100 to balance his account. The other letters, fourteen in number, he says were neither written nor signed by him, and his name signed thereto was without his authority, knowledge or consent. One J. H. Richards says he wrote eight of the fourteen letters at the dictation of Hopper, as a favor to him, as he said he was nervous

and could not write, but he did not know who wrote the other of the entire seventeen letters.  Hopper, he says, never claimed to him to have authority from A. Jackson or defendant to use the name of A. Jackson, and witness knew nothing of any such authority.

A. B. Scarborough; cashier of the First National Bank of Bonham, Texas, C. L. Bradford, cashier of the Fannin County Bank, and D. W. Sweeney, cashier of the Bonham National Bank, of Bonham, Texas, each swore that they had a great deal of experience in examining hand-writing and had compared different writings, and after comparing the handwriting of the seventeen letters, they were of the opinion that the letters were written by three different persons; the first five, to-wit, one dated January 16, 1893, one February 5, 1893, one February 22, 1893, one March 29, 1893, and the other written (but not dated) about April 22, 1893, were all written by the same person and were in the same handwriting; that eight of the letters, dated May 16, 1893, March 24, 1893, June 14, 1893, June 21, 1893, July 14, 1893, August 28, 1893, September 27, 1893, and October 2, 1893, were all written by the same person; and that the other four, dated July 20, 1893, September 29, 1893, November 20, 1893, and December 5, 1893, were all written by the same person and were all in the same handwriting.   The letters all were signed A. Jackson.

The first five were to following effect: the one dated January 16, 1893, enclosed $182.30, for whiskey received; the one dated February 5, 1893, enclosed $2 neglected in paying for first bill, and $45.50; the third dated February 22, 1893, was an order for a barrel of whiskey; the fourth, dated March, 29, was an order for one barrel of whiskey; and the fifth, written (without date) about April 22, 1893, enclosed $100.   All the other letters were orders for goods and enclosures of re-mittances to plaintiff for goods shipped.

The foregoing being the state of the testimony, the court below, among other things, instructed the jury in the 3rd paragraph of the general charge:   "If you believe from the evidence that the partnership between the defendant and A. Jackson was at any time dissolved and the business was continued by another party in the name of A. Jackson, orders were received by plaintiff Lee, and goods shipped and received, by said plaintiff, to A. Jackson, then I charge you that the defendant Burt Jackson, having given the business conducted in the name of A. Jackson the credit of his name, in order to terminate his liability for the obligations arising out of the legitimate transactions of said business, must have given reasonable notice of the disolution of the business rela-tionship which had formerly existed between himself and A. Jackson."

This charge is subject to the objection made to it by appellant that it made defendant Burt Jackson liable for the credit extended to Hopper in the conduct of the business in the name of A. Jackson after stock in the business had been sold to him and the partnership dissolved, whether defendant or A. Jackson authorized Hopper to continue the bus-iness in the name of A. Jackson, or not.  Hopper was not a member of the

firm carrying on the business in the name of A. Jackson, and plaintiff's sales to him would be upon his credit and not upon the credit of the A. Jackson firm, though he may have ordered goods in the name of A. Jackson, unless he did so by authority of the Jacksons, or with their knowledge or consent. The facts making defendant liable should have been submitted to the jury,—the authority of Hopper to use the name of A. Jackson in his business, or not. If plaintiff let Hopper have goods in the name of A. Jackson under circumstances that would not render defendant liable, he did so at his peril, even though the name of A. Jackson was used in ordering the goods. To render defendant liable, Hopper must have had authority to use the old firm name. The old firm would not be liable for goods ordered in the firm name by a forged order or one made without authority. The question of such authority should have been left to the jury. It might be established by circumstances, but the testimony was, to say the least, upon this point, conflicting.

The court's charge was erroneous and it was not corrected by other parts of the charge given.

The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*